## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 16-cr-00199-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

   v.

JOSE GERARDO VILLEGAS-TARIN,

      Defendant.

---

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
## FOR A VARIANT SENTENCE

---

COMES NOW defendant, Jose Gerardo Villegas-Tarin, by and through his undersigned counsel, and, pursuant to F.R.Crim.P. 32, D.C.COLO.LCrR 32.1, and 18 U.S.C. § 3553(a), respectfully submits this memorandum in support of his Motion for a Variant Sentence.

## I.  INTRODUCTION

On Thursday, October 20, 2016, at 9:00 a.m., Mr. Villegas will appear before the Court for sentencing on a guilty plea to a one count Information charging him with aiding and assisting in the preparation of a false federal individual income tax return (form 1040) for calendar year 2010, in violation of 26 U.S.C. § 7206(2).

1

The "relevant conduct" consists of the defendant's provision of assistance to others in the preparation of individual federal income tax returns (forms 1040) which claimed deductions and credits to which they were not entitled.

The total "tax loss" is $185,128, **approximately $100,000 of which is attributable to tax benefits realized by one taxpayer**, alone; *viz.*, the individual identified as "PH" in the Information.

Each of the 20 +/- other taxpayers realized tax benefits of approximately $3,000 to $5,000 each, on average, comprising in the aggregate the approximate $85,128 balance of total "tax loss" ("Plea Agreement, fn 2, pp. 8 and 9; Doc. 15).

In marked contrast, according to the government, Mr. Villegas' **"… combined direct financial benefit … [was] approximately $12,711"**.  (Government's "Objection to Presentence Report", pp. 1 and 2; Doc. 18)


## II.  AVAILABLE SENTENCES

### A.  Unlimited Discretion/Reasonableness

As this Court is keenly aware, the sentencing guidelines are advisory, only; they are but one of seven (7) factors to be considered.  Without regard to a "variance", the guideline range (adjusted level, 15) is 18-24 months (subject to a statutory cap (26 U.S.C. § 7206(2)) of three years).

Post-*Booker*, *United States v. Booker,* 543 U.S. 220 (2005); *Gall v. United States,* 552 U.S. 38 (2007); and, *Kimbrough v. United States,* 552 U.S. 85 (2007), and subject only to 18 U.S.C. § 3553(a), the Court's discretion is unlimited.  Sentences are

2

reviewable for "reasonableness", only (*Booker*, 543 U.S. 220, at 262-263; 18 U.S.C. §§ 3742(4)).

Section 3582(a)), provides that, in imposing sentence, "[t]he court … shall consider the factors set forth in section 3553(a) … ".  The only overarching mandate of § 3553(a) is that the sentence be *". . . sufficient but not greater than necessary . . ."* to fulfill the four-fold "purposes" of § 3553(a)(2); that is, that it strive for: (a) just punishment; (b) adequate deterrence; (c) protection of the public from further crimes of the defendant; and, (d) needed rehabilitation/ treatment for the defendant "in the most effective manner".

### 1.  A probationary sentence, with Special Conditions Attached

We respectfully submit that a probationary sentence with special conditions attached would be "… sufficient but not "greater than necessary" to the fulfillment of these purposes.

### B.  "Just Punishment"/"Deterrence"

### 1.  "Just Punishment"

Section 3553(a)(2)(A) calls for "just punishment" and the need to "reflect the seriousness of the offense"; § 3553(a)(2)(B) calls for "adequate deterrence".

This matter involves a plea to a single count of aiding and assisting in the preparation of a false federal individual income tax return (form 1040).

Pursuant to the plea agreement, Mr. Villegas has agreed to pay the full "tax loss" of $185,128, even though the government maintains that his "… combined direct financial benefit … [was] approximately $12,711…", only.  (This does not define the profile of a very attractive "business" model.)

Mr. Villegas will "not walk"!  Decidedly to the contrary, he faces this staggering financial obligation, all the while struggling to support his family of four (4) – one child with special medical needs -- on his $40,000⁺/year and his wife's $20,000⁺/year income.

These consequences of (punishments for) his misconduct are financially devastating, standing alone.  Should he be incarcerated, he would be rendered totally incapable of fulfilling any of his obligations – exponentially so, if, as a result of his incarceration and unavailability to his employer, he were to lose his job.

### 2.  "Deterrence"

Respectfully, that enormous obligation -- particularly relative to the *de minimis* financial benefit derived by him from his misconduct -- together with a probationary sentence with conditions attached, will provide a more than formidable "deterrent" to others who might consider similar misconduct.  Again, not a very attractive "business" proposition.

### C.  "Further Crimes of the Defendant"

### 1.  No Criminal History; Aberrant Behavior

There is no realistic concern for "further crimes of the defendant".  Mr. Villegas has no criminal history (other than this offense).

Agreeing to pay the entire "tax loss" from which he derived such a minimal

benefit, Mr. Villegas has evidenced an extraordinary acceptance of responsibility.

He is abjectly remorseful.  He has taken complete ownership of his wrongdoing.

He blames no one else (although others clearly share in complicity).

This is clearly isolated, aberrant behavior.  Neither it, nor any other wrongdoing,

will ever be entertained by, much less engaged in by, him.

### 2.  Strong Support (for and from) the Community

Not only does Mr. Villegas not constitute a threat to the public, he is universally

recognized as a genuinely good person, and a source of great strength and support

(financial, emotional, spiritual), and example to his wife, two (2) very young daughters,

and the community (neighbors, family, friends, pastor, co-workers, customers; please

see IV. B. 2, pg. 10, below).

### D.   To Provide [for] Medical Care or Other Correctional Treatment in the Most Effective Manner

The last of the four "purposes" concerns itself with rehabilitation and the

provision of "correctional treatment in the most effective manner".  To this

"purpose", 18 U.S.C. §3582 expressly directs that:

> The court, in determining whether to impose a term of
> imprisonment … shall consider the factors set forth in
> section 3553(a) … recognizing  that ***imprisonment is not
> an appropriate means of promoting correction and
> rehabilitation*** (emphasis supplied)

There is clearly no need or cause for concern here with respect to such "care" or

"treatment".

### E.    Summary:  Unlimited Discretion; Reasonableness

Post-*Booker*, the Court's discretion is unlimited.  Subject only to the overarching concern for a sentence that is "*sufficient but not greater than necessary*" to accomplish § 3553(a)(2)'s "purposes", the sentence is reviewable for *reasonableness*, only.  (*See Booker*, 543 U.S. at 268)

It is respectfully submitted that a probationary sentence with conditions, coupled with the mountainous amount of agreed-upon restitution is, both, more than "sufficient" and more than "reasonable".

### III.    THE OTHER SIX (6) CATEGORIES OF FACTORS

Section 3553(a)(2)'s four "purposes" are collectively embodied in the second of the seven (7) categories of factors.  The other six (6) " are:

1.    The nature and circumstances of the offense and the history and characteristics of the defendant;

2.    The kinds of sentences available;

3.    The kinds and ranges of sentences available under the guidelines;

4.    Pertinent Sentencing Commission policy statements;

5.    Avoidance of *unwarranted* disparate sentences; and,

6.    Provision for restitution.

### IV.    REASONS SUPPORTING A PROBATIONARY SENTENCE

For the following reasons, it is submitted that a probationary sentence, with special conditions, will provide for a "sufficient, but not greater than necessary" sentence, which fulfills the "purposes" of § 3553(a)(2), gives appropriate consideration to the other six (6) categories of factors, and, passes muster upon review for "reasonableness".

### A.  *"The Nature and Circumstances of the Offense"*

Mr. Villegas' guilty plea is to a one-count Information, charging him with willfully aiding and assisting another (PH) in the preparation of a federal individual income tax return (form 1040) for calendar year 2010.

While employed by the Maningo Group in the sale of insurance and tax return preparation, at the request of a Maningo customer/client ("PH"), that Mr. Villegas "reduce [his] taxes", Mr. Villegas prepared a return that was false in that it claimed a business expense ("contract labor") deduction in an amount materially in excess of that to which Mr. Villegas knew PH to be entitled.

"Relevant conduct" includes a similar filing for 2011, as well as the generation of 1099s for the putative "contract laborers" for, both, 2010 and 2011.

As noted, the total "tax loss" to the government (benefit to the pertinent taxpayers) incident to all relevant conduct is $185,128 (of which approximately $100,000 was to PH's direct benefit, and the remaining $85,000 spread amongst 20 +/- other individual taxpayers).

As noted above, the government alleges that Mr. Villegas's "… combined direct

7

financial benefit … [was] approximately $12,711".

Many others, including Mr. Villegas' employer (return preparation fees were typically remitted directly, through bank tax refund financing arrangements, to the Maningo Group), benefited, directly and indirectly.  Although many benefited -- and to a far greater extent than he -- only Mr. Villegas is being pursued by the government for restitution (recovery of the "tax loss"). Only he has been pursued criminally. [1]

To date, the government has given no indication that it intends to pursue the collection of any of the tax benefits improperly and knowingly realized by any of the other participants.  It appears to be content to pursue Mr. Villegas, only.

### B.  Mr. Villegas' Background, "History and Characteristics"

#### 1.  His Profile

a.    Mr. Villegas is 44 year old;

b.    He began working at the age of 6 (in his Uncle's grocery store in Parral, Mexico);

c.    He gave one year of military service to Mexico;

d.    His wife, Gloria, is also 44;

e.    Both emigrated from Mexico to the United States in the late 1990s;

f.    They were married in this Country on April 1, 2001;

---

[1] PH, who, alone, realized $100,000 in tax benefits, and who initially solicited Jose' assistance in "reducing [his] tax liability", has not been pursued either criminally or civilly.

g.    Theirs is a very good, solid, and mutually supportive, marriage;

h.    They have two (2) daughters, Wendy (age 13) and Leslie (age 10), both of whom are United States citizens;

i.    Leslie has an as yet undiagnosed health (hearing) issue, requiring specialized medical following;

j.    Although, both, Jose and Gloria entered the United States legally on visas, each of their respective visas expired many years ago;

k.    For the past 10 years, Gloria has worked as a cashier in a beverage store, earning about $20,000 per year;

l.    For the same length of time, Jose has been employed by the Maningo Group, a/k/a The Mile High Group, Inc., earning about $40,000 per year;

m.    Other than the instant matter, he has no criminal history;

n.    In marked contrast to the total "tax loss" of $185,128, the government alleges that his "combined direct financial benefit" from his misconduct was $12,711;

o.    Mr. Villegas has fully cooperated with the government from inception.  He voluntarily provided *all* documents to the agents on the initial contact.  He voluntarily offered all of his files and fully explained to them what he had done;

p.    He fully cooperated, even to the point of entering into a plea agreement

with the government and entering a plea of guilty;

q.   Moreover, he has agreed to the payment of the entire $185,128 in restitution;

r.   If incarcerated, 2/3's of his family's already meager financial support will be eviscerated;

s.   If incarcerated, he faces the potential loss of employment;

t.   Because of Jose's "key man" importance to the Group, if he is incarcerated, the job security of Maningo Group's 20 employees (8 locations) will also likely be threatened.

## 2. Observations of Others

Jose's neighbors, family, pastor, friends, co-workers, customers of Maningo Group, and others (many of whom have known him for 10, or as many as 20 years) speak of him as (please see individual letters to be provided to the Court through Mr. Burney):

| | | |
|---|---|---|
| A very good person | A family man | Generous |
| Hard-working | Professional | Kind-hearted |
| Sensitive to others | Supportive | Loving husband |
| Helpful to others | Kind | Compassionate heart |
| Attentive father | Dependable | Good friend |
| Respectful | Always willing to help others | |
| Loves his family over everything else | | |
| Puts his family first | | |
| One who drops everything whenever his family needs him | | |
| Of High moral standards | Good Neighbor | Honest |
| Humble | Caring dad | Loyal |
| Very honorable | Of high integrity | Cordial |
| Goes the extra mile to help others | | Strong moral values |
| "Huge impact" on life | | |

## C. Impact Upon Third Parties

It is entirely appropriate (indeed, it cannot be excluded) for the Court to consider the impact of its sentence upon innocent third parties.  Mr. Villegas' family – especially his two (2) young daughters -- will clearly, perhaps irreparably, be harmed if he is incarcerated.  They will lose 2/3's of their already meager financial support.

The Maningo Goup and its 20 employees in its 8 locations are also at severe risk.  According to the firm's principal, Mr. Rom Maningo, Mr. Villegas' availability is crucial to the business' survival.

Even before the Sentencing Guidelines became advisory, only, courts recognized that they did not adequately address the affect of the removal of an indispensable figure or figures from a small business.  See *United States v. Milikowsky,* 65 F.3d 4 (2d Cir. 1995) and *United States v. Somerstein,* 20 F.Supp. 2d 454 (E.D. N.Y. 1998).

S*ee* also, *United States v. Olbres*, 99 F. 3d 28, 36 (1st Cir. 1996) ("… [J]ob loss to innocent employees resulting from incarceration of a defendant may not be categorically excluded from consideration."); *United States v. Tomko*, 562 F. 3d 558 (3rd Cir. 2009) (sentence of **probation** not substantively unreasonable where tax loss was $228,000; sentencing court took into account that incarceration would threaten jobs of the defendant's employees; the government did not dispute that assertion).

In this District, in *United States v. Shull*, No. 13-cr-00358-WJM, the defendant was the sole proprietor of a small business with 28 employees.  As a function of the adverse impact that Mr. Shull's absence would have had upon the business' employees, he was sentenced to a probationary sentence of one (1) year, and a

11

dramatically reduced four (4) month (with a guideline range of 27-33 months) period of incarceration.  (The tax loss in *Shull* was $1.267 million, nearly seven (7) times the amount involved here.)

In *United States v. McCuistion*, 14-CR-00059 (D. Co. 2014), the defendant (a father with primary responsibility for dependent children), pled guilty to one count of aiding and assisting in the preparation and filing of false tax returns in violation of 26 USC §7206(2).  McCuistion owned and operated a tax preparation business.  For 2007 through 2009, he prepared and filed at least 1600 tax returns, including a number of them which claimed false deductions, generating a tax loss of $70,536.  The Court imposed a sentence of 3 years of probation and ordered the payment $26,765.29[2] of restitution, with a special condition of intermittent (weekend) confinement.

In *United States v. Gomez,* No. 16-mj-01016-MJW, the defendants, husband and wife proprietors of a burrito business in Denver, were convicted of willful failure to pay $484,000 of the business' employment taxes.  In large part, in noting their indispensability to the business and its employees, the Court imposed a five (5) year probationary sentence and ordered $231,000 in restitution.

Along with other considerations expressed herein, it is submitted that this factor strongly militates for a sentence of **probation,** rather than incarceration.

---

2 Unlike here, in *McCuistion*, the government undertook to pursue and collect the balance of the restitution ("tax loss") from the taxpayers who had wrongfully and directly benefited from it.

**D.  Probationary Sentences in Other Recent District of Colorado Tax Cases**

In *United States v. Sotelo*, 14-CR-00031 (D. Co. 2015), the co-owner of a tax preparation business was convicted, relative to 2007-2009, of aiding and assisting in the preparation and filing of 26 tax returns, on which were claimed false itemized deductions, overstated personal property taxes and overstated amounts of gifts to charities.  The tax loss was $71,978.  The Court imposed a 5 year probationary sentence.

In *United States v. Askins*, 15-CR-00277 (D. Co. 2016), a false income tax return (2007-2010) case, where the tax loss was $130,755, the Court imposed a sentence of 3 years probation.

In *United States v. Godoy*, 15-CR-00485 (D. Co. 2016), the defendant was convicted of conspiracy to defraud the IRS in the assessment and collection of personal income taxes (2010-2013) and of failing to report income derived from transporting illicit loads of narcotics.  The tax loss was $244,674; the sentence, 2 years probation. [3]

**V.  CONCLUSION**

---

[3]   Among other recent tax decisions in this District and elsewhere imposing probationary sentences, see *United States v. Sanchez,* 07-CR-158 (D. Co. 2008) (Colorado attorney convicted of evasion; **probation**); *United States v.* Rubenstein, 09-CR-6011 (S.D. Fl. 2009) (accountant; false tax return; millions of dollars; sophisticated secretion of assets; **probation** and house arrest); *United States v. White*, 11-CR-129 (D. Co. 2012) (obstruction; failure to file; false tax returns; **probation**); *United States v. Dinner,* 13-CR-145 (D. Co. 2013) (illegal sports betting; filing of a false tax return; $1.2 million in cash; **probation**); *United States v. Warner* (N.D. Ill. 2014) (tax evasion; hiding $107 million offshore; $24.4 million in unreported income; $5.6 million in tax; **probation**).

For the foregoing reasons, it is respectfully submitted that a sentence of probation, with special conditions attached, is appropriate here; that it is "sufficient", but not "greater than necessary" to address the four-fold "purposes" of § 3553(a)(2).

Such a sentence is, not only not disparate from, but consonant with, others imposed in this District and in other jurisdictions.

Mr. Villegas knows that he has made a terrible mistake. He accepts full responsibility for it. He has abject shame and remorse for having done so. Above all, he is most ashamed and fearful for what will become of his family.

This is truly aberrant behavior. It is decidedly not who he is. He is a good, honorable, honest, caring, generous and compassionate husband, father, neighbor, friend, co-worker.

He has evidenced full acceptance of responsibility for, and complete and sole ownership of, his wrongdoing. He has fully cooperated with the government, from inception, through the entry of his guilty plea and agreement to pay full restitution.

He is a role model, mentor, confidant, and moral inspiration and support for all around him. He is the indispensible financial support of his family. Without it, they cannot survive.

In lieu of incarceration, we respectfully submit that a probationary sentence will enable him to continue to be -- and to do – so much for all who are so dependent upon him.

14

It will also afford him the opportunity (decidedly in public's best interest) to complete full payment of the balance of the agreed-upon restitution.  The public would clearly realize a far greater benefit through such a sentence, than through one of incarceration.

Respectfully submitted this 6th day of October, 2016

**JOSEPH H. THIBODEAU, P.C.**

By:    s/Joseph H. Thibodeau
Joseph H. Thibodeau
155 South Madison Street, #209
Denver, CO 80209
(303)320-1250
law1@taxlit.com

CERTIFICATE OF SERVICE

I certify that on this 6th day October, 2016, I electronically filed the foregoing **DEFENDANT'S MOTION FOR A VARIANT SENTENCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

J. Chris Larson, Esq.
Assistant United States Attorney
United States Attorney's Office
1225 17th Street, Suite 700
Denver, Colorado  80202
J.Chris.Larson@usdoj.gov


_____ s/ Joseph H Thibodeau _____

16