**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 16-cr-00199-CMA

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**JOSE GERARDO VILLEGAS-TARIN,**

**Defendant.**

_____

**REPORTER'S TRANSCRIPT**
**(Sentencing Hearing)**
_____

Proceedings before the HONORABLE CHRISTINE M. ARGUELLO, Judge, United States District Court, for the District of Colorado, commencing at 9:06 a.m. on the 20th day of October, 2017, Alfred A. Arraj United States Courthouse, Denver, Colorado.

**A P P E A R A N C E S**

**FOR THE PLAINTIFF:**
J. CHRIS LARSON, U.S. Attorney's Office - Denver, 1801 California St., Suite 1600, Denver, CO 80202

**FOR THE DEFENDANT:**
JOSEPH H. THIBODEAU, Joseph H. Thibodeau, P.C., 155 S. Madison St., Suite 209, Denver, CO 80209

1            **OCTOBER 20, 2016**

2            (Proceedings commence at 9:06 a.m.)

3            THE COURT:  You may be seated.

4            Court calls Criminal Case No. 16-cr-00199-CMA,

5     encaptioned United States of America v. Jose Gerardo

6     Villegas-Tarin.

7            Counsel, would you please enter your appearances.

8            MR. LARSON:  Good morning, Your Honor, Chris Larson

9     for the United States.  With me at counsel table is

10    Special Agent Ken Valdez, from the IRS.

11           THE COURT:  Good morning.

12           MR. THIBODEAU:  Good morning, Your Honor, Joseph

13    Thibodeau, representing Mr. Villegas.  And with me in the

14    courtroom, I would like to note for the record, is

15    Mr. Villegas' wife Gloria, and his employer Mr. Rom

16    Maningo.

17           THE COURT:  All right.  For the record, the Court

18    also notes that Officer Gary Burney, representing the

19    United States Probation Office, is also in attendance at

20    this hearing.

21           PROBATION OFFICER:  Good morning, Your Honor.

22           THE COURT:  Would the court interpreter please

23    enter her appearance.

24           THE INTERPRETER:  Good morning, Your Honor,

25    Ms. Susana Cahill.

 1          THE COURT:  Good morning, Ms. Cahill.

 2          Does anybody object to the interpreter here today.

 3          MR. LARSON:  No, Your Honor.

 4          MR. THIBODEAU:  I am sorry?

 5          THE COURT:  Do you object to the interpreter here

 6     today?

 7          MR. THIBODEAU:  No, Your Honor.

 8          THE COURT:  All right.  Ms. Barnes, would you

 9     please administer the oath to Ms. Cahill.

10          (The interpreter is sworn.)

11          THE COURT:  Mr. Thibodeau, would you and

12     Mr. Villegas please approach the podium.

13          MR. THIBODEAU:  Yes, Your Honor.

14          THE COURT:  The record shows that on July 20, 2016,

15     pursuant to a plea agreement, Mr. Villegas entered a plea

16     of guilty to and was convicted of one count in the

17     Information, charging violation of 26 United States Code

18     Section 7206(2), aiding and assisting in the preparation

19     of a materially-false tax return.

20          We are here today for sentencing.  I have received

21     and reviewed the full presentence investigation report

22     dated September 19, 2016, as revised on October 11, 2016.

23          I have reviewed all addenda thereto, including the

24     letters from his wife, his daughters, his pastor, his

25     friends, and his business associates.

1          I have also reviewed Document No. 18, the

2    Government's objections to the presentence report.

3          Document No. 19, the defendant's objections to the

4    presentence report.

5          Document No. 20, the defendant's motion for a

6    variant sentence of probation.

7          Document No. 25, the Government's response to

8    defendant's motion for a variance, seeking 18 months of

9    imprisonment.

10          Document No. 27, the Government's motion to

11    decrease the offense level for acceptance of

12    responsibility, which was filed last night.

13          Are there any documents I failed to identify that I

14    should have reviewed in preparation for this hearing?

15          MR. LARSON:  None from the Government, Your Honor.

16          MR. THIBODEAU:  Your Honor, I have received in the

17    last day a letter, another letter from another individual

18    wishing to go on record as to Mr. Villegas, an associate

19    of some 10 years.  I did not have an opportunity to submit

20    that through Mr. Burney prior to this time, but I do have

21    it with me at this time, if the Court would care to review

22    it, or direct counsel as to how to proceed with respect to

23    it.

24          I also have the original letter that was submitted

25    by Mr. Villegas' daughters, Leslie and Wendy, if the Court

1    would wish to have that original.

2        THE COURT:  I have a copy.  I have read the

3    letters.

4        If you could hand the letter from the business

5    associate to Ms. Barnes, I will take a look at it right

6    now.

7        MR. THIBODEAU:  Thank you, Your Honor.

8        THE COURT:  Then I will instruct that if you give

9    it to Officer Burney, that it be filed as an addendum to

10   the presentence report.

11       Mr. Larson, have you seen the letter?

12       MR. LARSON:  I have not, Your Honor.

13       THE COURT:  Would you like to see it?

14       MR. LARSON:  I am happy to see it.

15       MR. THIBODEAU:  I am sorry, Your Honor, I did not

16   have the opportunity to copy it.

17       MR. LARSON:  Thank you, Your Honor.  We have

18   reviewed it.

19       THE COURT:  All right.  I have also reviewed it.  I

20   will leave it up here, Ms. Barnes, so you can give it to

21   Officer Burney.

22       Mr. Thibodeau, have you had enough time to review

23   the presentence report with Mr. Villegas?

24       MR. THIBODEAU:  I have, Your Honor.

25       THE COURT:  Did you explain the contents of the

1    report to him?

2           MR. THIBODEAU:  I did, Your Honor.

3           THE COURT:  Do you have any concerns about his

4    ability to understand the contents of the report?

5           MR. THIBODEAU:  I do not.

6           THE COURT:  All right.  We have a Spanish

7    interpreter here today, and I understand it is probably

8    because Mr. Villegas is a bit nervous and wants to make

9    sure he understood everything.

10          How have you communicated with your client, have

11   you used the Spanish interpreter, or does he understand

12   enough English to communicate with you?

13          MR. THIBODEAU:  Well, Your Honor, we have used the

14   interpreter on the occasions when we have been here in the

15   courthouse.  He does have a generally good comprehension

16   of English, I believe.  We also have in our office an

17   intern student who is bilingual, is Hispanic by native

18   origin, and who has assisted us every time we have met

19   with Mr. Villegas, to clarify any questions he may have

20   had.

21          THE COURT:  All right.  Mr. Villegas, have you had

22   any difficulty communicating with your lawyer during the

23   course of this representation?

24          THE DEFENDANT:  No.

25          THE COURT:  And did you review the presentence

1    report?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Did Mr. Thibodeau explain the contents

4    of that report to you?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand the contents of the

7    report?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Mr. Thibodeau, Mr. Larson,

10    both of you filed responses to the presentence report,

11    which were actually in the nature of clarifications.  With

12    the exception of the facts that were taken directly from

13    the plea agreement, the probation officer has revised the

14    presentence report to make the requested clarifications.

15          And those clarifications that were not accepted

16    based on the plea agreement, those objections will not

17    affect the guideline calculation, nor will they affect the

18    sentence that this Court imposes.  So I don't intend to

19    take any further action with respect to those objections

20    unless you require me to do so.

21          MR. LARSON:  No requirement for any further action

22    on behalf of the Government.

23          MR. THIBODEAU:  Nothing from the defense, Your

24    Honor.

25          THE COURT:  Any additional objections that either

1    of you would like to make at this time?

2            MR. LARSON:  None, Your Honor.

3            MR. THIBODEAU:  None from the defense, Your Honor.

4            THE COURT:  All right.  The Government has filed

5    Document No. 27, pursuant to United States Sentencing

6    Guideline Section 3E1.1(b), requesting that this Court

7    grant the defendant a full 3-level decrease in offense

8    level for acceptance of responsibility.  That motion is

9    granted.

10            This results in a total offense level in this case

11    of 15.  The defendant's Criminal History Category is a I.

12    That results in an advisory guideline range of 18 to 24

13    months of imprisonment, not more than 1 year of supervised

14    release, and a fine in the range of $4,000 to $40,000.

15            As part of my protocol for determining whether the

16    advisory guideline range is a range that is sufficient,

17    but not greater than necessary, to achieve the objectives

18    set forth in 18 United States Code Section 3553, I have

19    reviewed the presentence report, I have considered the

20    sentencing guidelines, and the factors set forth at 3553.

21            The defendant has filed Document Nos. 20 and 21

22    which is the motion and the briefing in support of the

23    variant sentence of probation.  Pursuant to 18 United

24    States Code Section 3553(a), I have reviewed that motion

25    and the Government's response thereto, Document No. 25.

1        And I will tell you, I am truly stymied by this

2    case.  Mr. Villegas' conduct makes no sense to me.  The

3    Government's failure to pursue collections and/or

4    prosecute anyone who benefited from Mr. Villegas' conduct

5    makes no sense to me.

6        And I haven't really slept well for the last two

7    nights, because I really do wrestle over these sentencing

8    decisions that I have to make.  Most other defendants who

9    file false tax returns or in some other way defraud the

10    Government, do so for major personal gain.

11        Mr. Villegas has absolutely no prior criminal

12    record, although he is here in the country illegally

13    because he overstayed a Visa.  He has a good employment

14    record.  He has, based on all of the letters I read, a

15    tremendous personal history, until he got involved in this

16    conduct.

17        But, with the exception of the $12,000 or so that

18    related to his own tax liability, it does not appear to me

19    that he personally gained anything from his conduct.  And

20    I understand the argument is made that he got new business

21    referrals, but I don't see any evidence of that.

22        Although he makes a better living than he would

23    probably make in Mexico, he and his family live a very

24    minimalized lifestyle.  He makes about $40,000 a year to

25    support his wife and his daughters.

```
 1              I am also stymied, Mr. Larson, by the Government's
 2       failure to pursue any collection against the others who
 3       were involved in this case or to prosecute them.  That
 4       makes no sense to me.  The bulk of the loss to the IRS was
 5       the result of the fraud that he helped P.H. perpetrate,
 6       whoever P.H. is.  Yet, Mr. Villegas has agreed to pay the
 7       full tax loss of $185,128, which drove up his offense
 8       level in this case.
 9              I don't understand why Mr. Villegas did what he
10       did, other than it seems to me like he is kind of a people
11       pleaser, and he wants to please people.  But this P.H.
12       who realized more than a hundred thousand dollars in tax
13       benefits, and it said in what I read that he initially
14       solicited Mr. Villegas' assistance to reduce his tax
15       liability, yet he has not been pursued criminally or
16       civilly, as far as I can tell.
17              It does appear to me that the defendant is abjectly
18       remorseful, as indicated by his lawyer.  He has taken
19       complete ownership of his wrongdoing.  But his conduct
20       seems to me to be a total aberration, albeit over the
21       course of 3 years.  He does face a staggering financial
22       obligation for a man who has a family of four to support.
23              He has one child who is special needs.  He makes
24       $40,000.  He has an obligation of $185,000 to repay.  He
25       is only 44.  This is essentially his only criminal
```

1    conviction of any kind, other than minor traffic

2    infractions.

3        Although, as I mentioned, he does not have legal

4    status in the United States, and it may be that he is

5    going to be deported.  I don't know what is going to

6    happen.

7        He is married.  His wife came to the United States

8    legally, also on a Visa.  She overstayed her Visa.  She is

9    currently here without legal authority.  So it may be she

10   will have to return -- they will have to return with their

11   daughters to Mexico if he gets deported.

12       He has worked steadily throughout his adult life.

13   The letter from his employer, who is here today, indicates

14   that he is an excellent worker, and that the employer

15   relies on him to keep that business going.  He actually

16   started working, I believe, as I read, when he was really

17   young; 6 years old, working with his uncle.

18       He has no mental health issues.  He doesn't have

19   drug or alcohol issues.  He has never used illegal

20   controlled substances.  He has no history of substance

21   abuse treatment.

22       So, I'm pretty much stymied.  I will need to hear

23   more from you about this.  Tax fraud is a serious offense.

24   Defendant's conduct took place over the course of 3 years.

25   It was not just like it was once did he it.  It included

1    50 false 1099-MISC forms for businesses and individual

2    clients.

3         And, as I said, I cannot make heads or tails as to

4    why he did what he did.  I will be honest with you, as a

5    general matter, I think the guidelines are too soft on

6    fraud crimes.  I consider white collar fraud, including

7    tax fraud, to be a very serious crime, for which serious

8    punishment needs to be meted out.  Because I agree with

9    the Government, you need to promote respect for the laws

10   of the United States, and you want to deter others.

11        But I was here until midnight last night, because I

12   couldn't figure out where I was going to go with this

13   case.  And, Mr. Thibodeau, you did an excellent job in the

14   briefing.  You gave me a number of cases here in our

15   district, and I took a look at what others were being

16   sentenced to, and I was really -- it made it really hard

17   for me, because while I think we need to be more stringent

18   with how we apply the sentencing under the tax guidelines.

19   And I think they are too lenient.

20        I am looking at my colleagues, and they are

21   essentially giving slaps on the wrist.  So I have to be

22   concerned with disparity in sentences.  So I looked at

23   13-cr-358.  There, the defendant was charged with failure

24   to file a tax return.  He owed taxes for 7 years, at least

25   more than a million dollar, and he owed penalties of

1   almost a million dollar.  And, in that case, the

2   Government indicated that it was going to seek a sentence

3   of 3 to 12 months.  It makes no sense to me.  He was

4   actually sensed to 4 months of imprisonment and 1 year of

5   supervised release.

6         In 14-cr-59, again, this was for 3 years that the

7   defendant prepared false tax returns for 18 individuals.

8   The tax loss was $70,536.  He had a much higher criminal

9   history.  He was Criminal History III, but a lower offense

10  level because he didn't have the 185-, but the advisory

11  guideline sentence was 18 to 24 months, and the judge

12  sentenced him to 3 years of probation.

13        In 16-mj-1016, for some reason it was all filed as

14  a misdemeanor, although it involved more than $484,000

15  worth of taxes over the course of 7 years.  The offense

16  level was similar to this one; 15, Criminal History I, 18

17  to 24 months, $231,000 in restitution that was ordered to

18  be paid, and 5 years of probation was the sentence.

19        So, I will tell you, I have been totally wrestling

20  with the 3553(a) factors in this case, particularly the

21  nature and circumstances of this crime, because tax

22  evasion or tax fraud is serious.  But nobody else was

23  prosecuted in this case.  The people who were really the

24  culprits were not prosecuted, and this gentleman is taking

25  the responsibility for the whole thing.

1          And balanced against that, I think the history and

2     characteristics of this defendant, who, based on all of

3     the letters that were submitted and all of his past

4     record, appears to me to have been a very law-abiding and

5     non-violent person who, up until he got involved in this

6     conduct, that I don't really understand, and I need to

7     understand more -- and I know generally defense counsel

8     doesn't want them to speak about the crime.

9          But, I will tell you, Mr. Villegas is covering up

10    for some people.  He won't talk about it.  But I can't

11    understand why he would have done it, because he didn't

12    seem to gain anything, other than the fraud statements

13    that he filed on his own behalf, which were about $12,000,

14    not 185-.

15         So, when I was considering all of the sentencing

16    factors, including the nature and circumstances of this

17    offense, his lack of criminal history, his favorable

18    personal history and characteristics, I agree with the

19    probation officer that it is apparent that he poses a very

20    minimal, if any, risk to recidivate.  And he has no risk

21    to the community.

22         And, after a number of sleepless nights, I can tell

23    you, I still don't know what he should be sentenced to;

24    whether there should be a prison sentence and, if so, what

25    would be the number of months that would be sufficient,

1    but not greater than necessary, to achieve the objectives

2    of sentencing, or whether it should be probation.

3         So, with that being said, Mr. Thibodeau, I will

4    hear from you, then I will hear from Mr. Larson, and then,

5    Mr. Villegas, I will hear from you if you wish to make a

6    statement to me on your own behalf.

7         Mr. Thibodeau.

8         MR. THIBODEAU:  Well, Your Honor, thank you.  I

9    must say, first, I don't know that I can add anything to

10   Your Honor's analysis.  I have spent many, many nights

11   struggling with this case, as well.  If I did not believe

12   in the things that are being said and have been said about

13   Mr. Villegas, if I had not believed what I've seen in

14   those letters, if I had not seen it for myself over the

15   past 4 years of this investigation, and this extremely

16   stressful and painful experience for him and his family, I

17   would not have continued with his representation on,

18   essentially, a pro bono basis.

19        I believe in him.  I believe in the injustice here

20   that would be brought to him if he were incarcerated.  I

21   share the Court's observations and concerns about, on the

22   one hand, the Government's significant -- attachment of

23   significance to tax loss numbers.

24        On the other hand, it has boggled my mind from the

25   very beginning, as well, that they have at no time shown

```
 1    any interest in or taken any steps to either assess or
 2    collect any revenue from anybody else who was involved.
 3         And, as the Court accurately states, the others are
 4    the ones who really benefited.  Admittedly, Jose was
 5    instrumental in assisting them.  He has pled to that.  But
 6    I do believe that it is a significant overkill on the part
 7    of the Government to suggest that he should bear the
 8    entire burden, not only criminally, but on top of that,
 9    civilly.
10         And there is, even today, no reason why the parties
11    at interest; P.H., notably, and the others who were
12    involved in the false 1099s from which they benefited with
13    credits and refunds, there is no reason why they can't be
14    pursued, even today.  We have not heard any reason, no
15    explanation from the Government, as to why they have not
16    pursued anyone other than my client.
17         So, I do believe in that sense, it is -- it would
18    be a miscarriage of justice to incarcerate him and pursue
19    him only, while turning a blind eye and back to or walking
20    away from, or maybe just taking the easy way out.
21         We extracted and agreed upon him the bail
22    restitution if he wanted to do the deal.  So we don't have
23    to bother collecting from anyone else.  P.H., they're all
24    local.  P.H. isn't invisible.  They are locatable.  We
25    have seen nothing.  And the Government has produced
```

1    records of transcripts that show no indication whatsoever

2    of any attempt to pursue anyone else.

3         So I believe that the Government's request,

4    suggestion, if you will, for any jail time here in that

5    context is totally inappropriate.  I would also assert and

6    appeal to the Court's compassion and mercy for Jose's

7    family, particularly his two young daughters who,

8    obviously, from their letters, are very, very dependent

9    upon their father, not just financially, but in many, many

10   ways and, obviously, have an extremely strong connection

11   to him and relationship with him.

12        They need him right now.  They are 10 years old.

13   They are 13 years old.  Leslie, a 10-year-old, has as of

14   yet, an undiagnosed hearing disorder.  If Jose is taken

15   away from them, I believe irreparable harm would be done

16   to them.

17        And, as we noted in our memorandum, as well, I

18   believe it is appropriate and, indeed, if I can say so

19   respectfully, incumbent upon the Court to take into

20   account the impact that incarceration would have on third

21   parties; notably, the young children.

22        Mr. Maningo, he is here today to speak to it.  He

23   shared with me before that if Jose is incarcerated, he

24   will close the business.  He is 78 years old.  He built

25   the business many, many years ago.  Jose came to him 12

1    years ago, and he offered him a job for 6 months, at no

2    pay.  And here we are 12 years later, and Jose has become

3    the main support for that operation, at Mr. Maningo's

4    direction.  So, I would respectfully submit, the Court

5    should take that impact on third parties into account, as

6    well.

7         As the Court has also accurately summarized, there

8    are many cases, and many of them in this district, and

9    recent cases, where it does boggel the mind.  The numbers

10   are much greater.  In the McCuistion case, there were

11   1,600 returns prepared, and there was a probationary

12   period there, with conditions attached, imposed by Judge

13   Krieger, if I recall.

14        Virtually every -- not every, many members of this

15   bench have considered this issue in the context of much

16   more serious offenses against tax laws.  No one is

17   suggesting, as Your Honor accurately notes, that the tax

18   laws are being taken lightly.  And Jose has learned a

19   very, very difficult lesson here.

20        I believe you are correct, he is a pleaser.  He

21   wants to accommodate people.  He wanted to accommodate

22   Mr. Maningo.  It reflected favorable on the business if he

23   could help his clients out, and maybe bring more business

24   to the company, not to him.

25        Obviously, as we noted -- this Court has noted, his

1   benefit, aside from his own tax returns, as the Government

2   points to, is non-existent.

3          So I would appeal to the Court's sound discretion.

4   I would appeal to its mercy and compassion, not so much

5   for Jose, but his family, and two young, beautiful

6   daughters, to impose a probationary sentence.

7          THE COURT:  Thank you, Mr. Thibodeau.

8          Mr. Larson.

9          MR. LARSON:  Thank you, Your Honor.  The individual

10  that is being sentenced today is the individual

11  responsible for this crime.  The Government has heard and

12  appreciates this Court's concern about the others for whom

13  these false documents were created.

14          It is difficult to talk about prospective cases

15  that could or could not necessarily be brought, since

16  those matters aren't presently here.  But, if I could,

17  Your Honor, ask the Court to consider something that is

18  reflected within the four corners of the plea agreement.

19  This individual put himself in the position of a tax

20  preparer.  Individuals came to him to have their tax

21  returns prepared.  And if the tax preparer is engaging in

22  the creation of this process, both implicitly, and if not

23  explicitly saying, this process is okay.

24          Not only does that affect his own knowledge,

25  inculpating his own knowledge, as he acknowledges as being

1    knowingly, willfully, and wrongfully affected here, but

2    also potentially affecting what is happening to the

3    individuals who are coming to him in his role as a tax

4    preparer, seeking his help and his guidance.

5        Now, he did this on approximately 50 occasions, by

6    his own admission, over the course of 3 years.  We

7    certainly appreciate, Your Honor, and I can tell you that

8    we have reflected on the nature -- the financial nature of

9    the benefit of this crime and how it applies to this

10   defendant with respect to his own tax returns.  And he

11   received a personal benefit of more than $12,000 engaging

12   in this conduct, not only for others who are coming to

13   him, seeking this, but also for himself; in other words,

14   he's chose to go do this for his own tax returns.

15       Now, it's not the crime of the century.  It is a

16   crime here that takes place over the course of 3 years.

17   And, you know, the defendant here, looking at the 3553(a)

18   factors, the seriousness of the offense, you have the need

19   to punish, and you have the need to deter.  The defendant

20   is still working in this particular business, and others

21   who presumably are in this business and looking to see

22   what happens here, you know, are going to have an

23   understanding about the need to reflect and to promote

24   respect for the tax laws.

25       You know, on more than -- on approximately 58

1    occasions, he is creating a false document, and he's using

2    that in two different ways.  And I just ask the Court to

3    consider for a moment the difficulty in identifying a

4    crime like this.

5         He's creating a false 1099 for a business to

6    increase the business expenses for the business and

7    thereby decrease the tax liability of that business.  That

8    same document is then being used in the tax return for an

9    individual, that gives that individual a tax credit or a

10   tax benefit that it otherwise would not have been entitled

11   to.

12        There's no other evidence outside of that that

13   there is anything wrong going on here.  And while the

14   defendant is contrite today because he has been caught,

15   the Government submits he is being contrite because he has

16   been caught.

17        And the fact that this has been going on for 3

18   years, showing it was not inadvertent, it was not a

19   mistake, it was deliberate.  And deliberate not just for

20   others in increasing this business, but also deliberate in

21   the fact that Mr. Villegas was using this to benefit

22   himself directly in his own tax returns personally.

23        The Government, therefore, submits, Your Honor,

24   that the individual who is being prosecuted here today is

25   the individual who is responsible, and that a sentence

1    needs to be placed that is commensurate with both the

2    seriousness of the offense and the need to punish and the

3    need to deter.

4         For that reason, Your Honor, if we look at the

5    guidelines, the Government has recommended a guideline

6    sentence that is at the bottom of the guidelines, to

7    reflect both the position of probation, and also the

8    personal characteristics that the defendant highlights for

9    the Court.

10        I just suggest, Your Honor, that the impact on this

11   family is consistent with the impact of any family that

12   has a spouse who is faced with this.  And while it is

13   certainly hard and certainly difficult, and the Government

14   understands with exquisite clarity, that those personal

15   characteristics, at least, are not different than another

16   similarly-situated family.

17        THE COURT:  Let me ask you this.

18        MR. LARSON:  Yes.

19        THE COURT:  So the Information is from January 1,

20   2010, to May 28, 2012.  Is there any evidence that -- what

21   happened after 2012?  Was he continuing to do it up until

22   the time he was arrested, or had he stopped at that point?

23        MR. LARSON:  Your Honor, could I just have one

24   moment?

25        THE COURT:  You may.

```
 1              (Off-the-record discussion had.)
 2              MR. LARSON:  Your Honor, I am afraid I don't have
 3      further information on that, given both the nature of the
 4      investigation and the timing of it.
 5              THE COURT:  All right.  Thank you very much,
 6      Mr. Larson.
 7              Mr. Villegas, do you wish to make any statement to
 8      me on your own behalf before I impose sentence?
 9              THE DEFENDANT:  Yes, Your Honor.
10              THE COURT:  All right, you may.
11              THE DEFENDANT:  Yes, Your Honor.  I did want to say
12      I did assist this person in doing his taxes and to
13      generate expenses so that he could save money.  But I
14      never imagined, it never crossed my mind I would cause so
15      much damage.
16              And I know all the damage that I caused, and I am
17      very ashamed of it.  I am ashamed in the eyes of my
18      family, of my mom, of my daughters.  I'm just very
19      nervous.  But I would like to be able to continue to work,
20      to be able to support my family, to keep on working with
21      Mr. Maningo.  I am very repentant, and I ask for your
22      compassion.
23              THE COURT:  All right.  As a result of the United
24      States Supreme Court's rulings in United States v. Booker
25      and United States v. Fanfan, the United States Sentencing
```

1    Commission Guidelines have become advisory to this Court.

2         While this Court is not bound to apply those

3    guidelines, it has consulted them and taken them into

4    account, along with the sentencing factors set forth at 18

5    United States Code Section 3553(a).

6         The Court determines that no finding is necessary

7    concerning the objections to the presentence report,

8    because the probation officer's revised presentence report

9    has adequately addressed the Government's and defendant's

10   objections and clarifications.  Furthermore, the remaining

11   controverted matters will not be taken into account in

12   imposing sentence, nor will they affect the sentence the

13   Court imposes.

14        Neither the Government nor the defendant has

15   challenged any other aspect of the presentence report,

16   therefore, the remaining factual statements and guideline

17   applications are adopted without objection as the Court's

18   findings of fact concerning sentencing.

19        The Court finds that the total offense level is 15.

20   The defendant's Criminal History Category is a I.  That

21   results in an advisory imprisonment range of 18 to 24

22   months, a fine range of $4,000 to $40,000, and the

23   supervised release range is not more than 1 year.

24        Regarding the defendant's motion for a variant

25   sentence of probation, for the reasons previously argued

1    by the defendant and stated by this Court, the Court finds

2    that when the history and characteristics of the

3    defendant, as well as the nature and circumstances of this

4    offense, are juxtaposed with the goals of sentencing,

5    pursuant to 18 United States Code Section 3553(a), a

6    variant sentence is warranted in this case.  The Court

7    thus grants the defendant's request for a non-guideline

8    sentence.

9         Pursuant to the Sentencing Reform Act of 1984, it

10   is the Judgment of the Court that the defendant, Jose

11   Gerardo Villegas-Tarin, is hereby placed on probation for

12   a term of 3 years.

13        While on probation, he shall not commit another

14   federal, state, or local crime; shall not possess a

15   firearm, as defined in 18 United States Code Section 921;

16   and shall comply with the standard conditions that have

17   been adopted by this Court.

18        He shall not unlawfully possess a controlled

19   substance.  He shall refrain from any unlawful use of a

20   controlled substance.

21        The Court waives the mandatory drug testing

22   requirements of 18 United States Code Section 3563(a)(5),

23   because the presentence report indicates a low risk of

24   future substance abuse by this defendant.  He shall

25   cooperate in the collection of DNA, as directed by the

1    probation officer.

2         The Court finds that the following special

3    conditions of probation are reasonably related to the

4    factors set forth at 18 United States Code Section 3553(a)

5    and 3583(d).  Further, based on the nature and

6    circumstances of this offense and the history and

7    characteristics of this particular defendant, these

8    conditions do not constitute a greater deprivation of

9    liberty than reasonably necessary to accomplish the goals

10   of sentencing.

11        Pursuant to 18 United States Code Section

12   3563(b)(2), it is ordered that the defendant make

13   restitution to the victims; the Internal Revenue Service,

14   in the amount of $185,128.

15        The defendant shall not incur new credit charges or

16   open additional lines of credit without the approval of

17   the probation officer unless the defendant is in

18   compliance with the periodic payment obligations imposed

19   pursuant to the Court's judgment and sentence.

20        As directed by the probation officer, the defendant

21   shall apply any moneys received from income tax refunds,

22   lottery winnings, inheritances, judgments, and any

23   anticipated or unexpected financial gains, to the

24   outstanding court-ordered financial obligation in this

25   case.

1          The defendant shall make payment on the restitution

2     obligations that remains unpaid as of the commencement of

3     probation.  Within 60 days of commencement of probation,

4     he shall meet with the probation officer to develop a plan

5     for the payment of restitution.  This plan will be based

6     on the defendant's income and expenses, and the plan will

7     be forwarded to the Court for review and approval.

8          The defendant shall work with the probation officer

9     in the development of a monthly budget that will be

10     reviewed with the probation officer on a quarterly basis.

11          If the defendant has an outstanding financial

12     obligation, the probation officer may share any financial

13     or employment documentation relevant to the defendant with

14     the Asset Recovery Division of the States Attorney's

15     Office to assist in the collection of the obligation.

16          The defendant shall document all income and

17     compensation generated or received from any source, and

18     shall provide such information to the probation officer as

19     requested.

20          The defendant shall comply with all legal

21     obligations associated with the Colorado Department of

22     Revenue and the Internal Revenue Service regarding federal

23     and state income taxes.  This includes resolution of any

24     tax arrearages, as well as continued compliance with

25     federal and state laws regarding the filing of taxes.

1         All employment for the defendant shall be approved

2    in advance by the supervising probation officer, and the

3    defendant shall not be employed in the tax preparation

4    business.

5         If the defendant is deported, he shall not

6    thereafter re-enter the United States illegally.  If he

7    re-enters the United States legally, he shall report to

8    the nearest United States Probation Office within 72 hours

9    of his return.

10         The defendant shall pay a special assessment of

11    $100, which is due and payable immediately.  The Court

12    finds, that although the defendant may have the ability to

13    pay a fine, restitution is the primary focus of this case,

14    and as such, the Court will waive the fine in this case.

15         The Court determines that the defendant does not

16    have the ability to pay interest, and it is ordered that

17    the interest requirement is waived for restitution.  The

18    payment of the monetary obligations shall be due as

19    follows:

20         The special assessment and restitution obligations

21    are due immediately, and shall be paid in monthly

22    installment payments during the term of probation, and

23    that monthly installment payment will be calculated as at

24    least 10 percent of the defendant's gross monthly income.

25         Now, Mr. Villegas I want you, and I want your wife

1    to understand, that I do take my task of sentencing very

2    seriously, because I understand that I have your life, or

3    at least part of it in my hands, and I want to be fair to

4    you.

5         But I also have an obligation to the public and to

6    society to protect them from further crimes; to promote

7    respect for the laws of the United States; to provide a

8    just punishment, but one that will deter you and others

9    from committing similar criminal conduct.

10        Now, in balancing these, this one was hard, because

11   I don't disagree with the Government that this sentence

12   isn't going to deter others who look at it and say, all

13   they get is a slap on the wrist.  But your case was

14   different for me, because so many things just didn't match

15   up for me.

16        I gave you a real break here.  But, part of my

17   analysis is, you have to realize that, and Mr. Maningo

18   needs to understand, that it is pretty likely that you may

19   be deported as a result of this.  So you are not going to

20   be able to continue to work in his office.  You will not

21   be able to do tax preparations, at least.

22        And, if you are deported, I just want to make sure

23   you understand that you cannot come back to this country

24   unless you want to go to prison.  Because even if you do

25   nothing else wrong, if you are found here in this country,

1    or if you stay in the country and you know you are not

2    here legally, if you are caught, then you now have this as

3    a felony on your record, and you will be going to prison

4    the next time.

5            So, your conduct has resulted in a more serious

6    consequence than most people face, because most people

7    that come before me for tax evasion or tax fraud are

8    citizens and can't be deported.  One of the consequences

9    to you, because you are not here legally, is you probably

10   will be deported.

11           And I need to make sure you and your wife

12   understand, because I have had a lot of defendants who

13   come back before me after being deported, and they come

14   back because their children and their wife are here.  So,

15   unless your wife wants you to be in prison, she is going

16   to have to move with you, if you get deported, and take

17   your daughters with you.  Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  All right.  I do believe that a

20   sentence of 3 years of probation, under the facts and

21   circumstances of this case, together with the conditions I

22   imposed, does reflect the seriousness of this offense, and

23   is a sufficient, but not greater than necessary, sentence

24   to achieve the objectives of sentencing.

25           Mr. Villegas, although you've waived your right to

1    appeal under the circumstances outlined in your plea

2    agreement, to the extent that you have not waived your

3    right to appeal, you are advised that if you desire to

4    appeal, a Notice of Appeal must be filed with the Clerk of

5    the Court within 14 days after entry of Judgment or your

6    right to appeal will be lost.

7         If you are not able to afford an attorney for an

8    appeal, I will appoint one to represent you.  And, if you

9    request, the Clerk of the Court must immediately prepare

10   and a file a Notice of Appeal on your behalf.

11        I will direct you to report to the probation office

12   immediately after this hearing.  And upon your reporting

13   to them, your bond is exonerated.

14        Is there anything more that needs to be brought to

15   my attention?

16        MR. LARSON:  Your Honor, nothing more than has

17   already been brought to the Court's attention in its

18   response to the motion for variant sentence and the

19   arguments made here regarding sentence.  And to the extent

20   it is necessary, the Government would just preserve its

21   objection.

22        THE COURT:  All right.  Mr. Thibodeau, anything

23   further from you?

24        MR. THIBODEAU:  Nothing from the defense, Your

25   Honor.

1          THE COURT:  All right.  Mr. Villegas, best of luck

2    to you.  I hope I won't ever see you in courtroom again.

3          Court will be in recess.

4          MR. THIBODEAU:  Thank you, Your Honor.

5          (Proceedings conclude at 9:50 a.m.)

6

7          **R E P O R T E R ' S    C E R T I F I C A T E**

8

9          I, Darlene M. Martinez, Official Certified

10   Shorthand Reporter for the United States District Court,

11   District of Colorado, do hereby certify that the foregoing

12   is a true and accurate transcript of the proceedings had

13   as taken stenographically by me at the time and place

14   aforementioned.

15

16         Dated this 8th day of August, 2017.

17

18         _____

19         s/Darlene M. Martinez

20         RMR, CRR

21

22

23

24

25